UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICARDO PITTMAN, JR., ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-1433 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| UNITED STATES POSTAL ) | |
| SERVICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Ricardo Pittman, Jr., a *pro se* litigant, ran into trouble at a local post office. A postal employee thought that Pittman was harassing customers and disrupting the flow of business, so the employee called the police. The police answered the call, and when it was all said and done, the Evergreen Park Post Office banned Pittman from the building. He could not enter the post office at all, except to access his post office box in the foyer.

Pittman responded by filing suit against the United States Postal Service, the United States, the Postmaster General, and the postal worker who called the police. He seeks damages under the Federal Tort Claims Act and state law.

For the following reasons, the Court grants the government's motion to dismiss the second amended complaint (Dckt. No. 46) with prejudice.

### Background

Before diving into the story, the Court offers one overarching observation. Pittman is a *pro se* litigant, and he did his level-best to file a complaint that states a claim. Even so, from time to time, the complaint is more than a little difficult to follow.

In certain spots, the complaint seems to recount the version of the story told by the police. It is as if the narrator changes, from Pittman's voice to the police officer's voice. *See* Second Am. Cplt., at ¶¶ 17–26 (Dckt. No. 45); *see also id.* at ¶ 25 ("Upon arrival, I met with Mr. Ricardo Pittman, Jr. . . ."). The complaint seems to tell the story, from the officer's perspective.

Plaintiff appears to have borrowed heavily from the police report. In fact, Pittman attached the police report to his complaint. *See* Reporting Officer Narrative (Dckt. No. 45, at 21 of 27).

That's not all. In another paragraph, the complaint alleges something about HACC vouchers that have no discernible connection to the incident at the post office. *See* Second Am. Cplt., at ¶ 45 (Dckt. No. 45) ("Ms. Donna Burns for ('HACC') call me and stated Viamonte realty, LLC; stated to her that they will not be excepting and HACC vouchers payments from Tenants."). Maybe Pittman lifted that language from some other complaint about some other dispute.

Whatever the explanation, the Court will read the complaint liberally in Plaintiff's favor, given that he has no lawyer. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) ("A trial court is obligated to liberally construe a *pro se* plaintiff's pleadings."). Plaintiff gave the complaint his best shot, and this Court will do the same.

Ricardo Pittman, Jr. enjoys going to the post office. By the sound of things, the feeling is not always mutual. The post office closed its doors to Pittman and banned him from the building after he allegedly caused a ruckus.

The ban came after an incident in March 2019. The Evergreen Park Police Department received a call from the local post office about a customer who was harassing customers and employees. *See* Second Am. Cplt., at ¶ 17 (Dckt. No. 45).

2

An officer soon arrived on the scene, and noticed no obvious disturbance. *Id.* at ¶ 18. A postal employee pointed out Pittman as the offending customer. *Id.*

Pittman told the officer that he "has an ongoing problem with the post office in that he is not receiving his mail in his PO Box." *Id.* at ¶ 19. He "related to an ongoing issue with the United States Postal Service." *Id.*; *see also id.* at ¶ 25.

Temeka Lewis, the supervisor of the post office, explained the situation to the officer. *Id.* at ¶ 20. She relayed that Pittman was "upset" that the Postmaster General, Louis Dejoy, apparently did not receive his certified mail. *Id.*

By the look of things, Pittman and the U.S. Postal Service have a choppy history. Lewis added that Pittman frequently complains to Postal Service workers and bothers other customers, disrupting the flow of business.[1] *Id.* at ¶ 21.

Lewis declared that Pittman was *persona non grata*. She asked the officer to tell Pittman that he could continue to access his post office box in the foyer of the building. *Id.* at ¶ 22. But he was no longer welcome in the main office area, or in the receiving area. *Id.*

The responding officer – acting on Lewis's direction – told Pittman that he could no longer enter the main office or the receiving area of the Evergreen Park Post Office. *Id.* at ¶¶ 22–23. If Pittman did enter that area, Lewis would pursue a trespass complaint. *Id.* at ¶ 22.

Pittman acknowledged the officer's trespass warning, but said that the postal workers were harassing him, not the other way around. *Id.* at ¶¶ 23, 26. He then left the Evergreen Park Post Office. *Id.*

---

[1] In fact, Pittman attached a series of police reports to his complaint. He had run-ins with the police at the Evergreen Police Department on March 6, 2019, and January 27, 2020, and June 27, 2019, and August 16, 2019. *See* Reports (Dckt. No. 45, at 21–24 of 27); *see also id.* at 23 of 27 (Reporting Officer Narrative dated June 27, 2019) ("Pittman advised that he had sent a letter to President Trump and has not yet received a reply. Pittman advised that the Secretary of State as well as the President may have appointed the current employees at the Post Office in order to 'sweep the matter under the rug.'").

Pittman left one federal building, and entered another. He left the post office and eventually went to the federal courthouse. He filed suit against Lewis, DeJoy, and the U.S. Postal Service. *See* Cplt., at ¶ 1 (Dckt. No. 1).

The original complaint included only one count: a claim under the Due Process Clause of the Fourteenth Amendment. But Pittman soon filed two amended complaints.

The second amended complaint included four counts – two federal claims, and two state claims. Count I alleged a violation of the Due Process Clause of the Fourteenth Amendment, and invoked section 1983. Count II alleged a violation of the Civil Rights Act, and once again invoked section 1983. Count III alleged intentional infliction of emotional distress under Illinois law, and Count IV alleged willful and wanton misconduct under Illinois law.

Judge Guzmán originally presided over the case. Right off the bat, service of process became an issue.

On multiple occasions, Judge Guzmán directed Pittman to file a report with an update about service of process, or risk dismissal. *See* Dckt. Nos. 6, 10, 12. After Pittman failed to comply, Judge Guzmán dismissed Lewis from the case without prejudice under Federal Rule of Civil Procedure 4(m). *See* 8/12/22 Order (Dckt. No. 14). Because counsel had appeared on behalf of DeJoy (in his official capacity as Postmaster General) and the Postal Service, they were not dismissed. *See* 2/21/23 Mem. Opin. & Order, at 2 (Dckt. No. 36).

The Postal Service and the Postmaster General moved to dismiss Pittman's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *Id.* at 3. Judge Guzmán dismissed Counts I and II with prejudice, because federal employees do not act under color of

state law within the meaning of 42 U.S.C. § 1983. *Id.* at 1. Judge Guzmán also dismissed without prejudice Pittman's claim for intentional infliction of emotional distress.[2] *Id.* at 4.

Judge Guzmán did not entirely close the door on the case. But at best, he left it cracked open, just a little. Judge Guzmán granted Pittman "leave to amend one final time." *Id.* at 5. But Judge Guzmán cautioned that, in bringing an amended complaint, Pittman should "carefully consider a few things." *Id.*

For starters, the Court highlighted the fact that Lewis had been dismissed from the case. *Id.* at 6. Also, Judge Guzmán forewarned that Pittman should not include any claims under 42 U.S.C. §§ 1981, 1983, or 2000a against the United States or the Postmaster General (since any amendment appeared unable to cure the defects). *Id.* at 5–6.

Finally, Judge Guzmán noted that Pittman would need to exhaust his administrative remedies before bringing a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80. And any claim must not fall within the statutory exceptions to the waiver of sovereign immunity (listed at 28 U.S.C. § 2680). *Id.* at 6.

Pittman opted to file yet another amended complaint. He called the filing the second amended complaint, even though he had already filed a second amended complaint. *See* Cplt. (Dckt. No. 1); Am. Cplt. (Dckt. No. 4); 6/2/22 Second Am. Cplt. (Dckt. No. 5); 4/18/23 Second Am. Cplt. (Dckt. No. 45). So there is a second amended complaint from June 2022, and another second amended complaint from April 2023.

To avoid possible confusion, the Court will use Pittman's lingo. The Court will refer to the current version of the complaint by its namesake – the second amended complaint – even

---

[2] The Order in question dismissed the first amended complaint filed on April 4, 2022, not the second amended complaint filed on June 2, 2022.

though it is the third amended complaint. The Court is referring to the pleading filed on April 18, 2023.

The operative complaint includes four counts. The first two counts invoke the Federal Tort Claims Act (and the Fourteenth Amendment). Count I alleges negligence under a "failure to warn" theory. Count II alleges negligence, too, and cites a provision of the Second Restatement of Torts about negligence by independent contractors. *See* Second Am. Cplt., at 8–10 (Dckt. No. 45). But drilling down, it doesn't take much to see that Count II isn't really about negligence. Count II alleges racial discrimination, and invokes the Civil Rights Act.

Count III invokes both state law and federal law. Count III begins with the heading "CAUSE OF ACTION UNDER FEDERAL LAWS." *Id.* at 10. Count III alleges "premises negligence" and intentional infliction of emotional distress. *Id.* at 10–12.

Count IV is a state law claim for willful and wanton misconduct. *Id.* at 12–13. It begins with the heading "PENDENT CLAIMS BASED ON THE LAWS OF ILLINOIS COMMON LAW." *Id.* at 12. Plaintiff asks this Court to exercise supplemental jurisdiction over a "STATE LAW CLAIM." *Id.*

The complaint brings claims against four defendants: the United States, the U.S. Postal Service, Postmaster General DeJoy, and Lewis. *See generally id.*

The United States moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Mtn. to Dismiss (Dckt. No. 46). The government contends that the claims do not fall within the limited waiver of sovereign immunity under the Federal Tort Claims Act. *Id.* at 3–4. It also argues that Pittman failed to exhaust his administrative remedies before filing suit. *Id.* at 4.

**Analysis**

Before diving in, the Court makes five overarching observations.

First, Pittman brings all four claims against Lewis, but Lewis isn't here. Pittman never served Lewis with process, and Judge Guzmán dismissed her from the case under Rule 4(m). Lewis wasn't here then, and she isn't here now. All claims against Lewis are dismissed.

Second, the Court understands Pittman to bring his tort claims under the Federal Tort Claims Act. The *only* proper defendant under the Act is the United States. *See* 2/21/23 Mem. Opin. & Order, at 4 (Dckt. No. 36); *see also Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982). Therefore, any purported tort claims against the U.S. Postal Service and DeJoy (the Postmaster General) are dismissed.

Third, the claims are a bit of a mish-mosh of legal theories and federal and state statutes. For example, Count I invokes both the Federal Tort Claims Act (which applies to federal actors) and section 1983 and the Fourteenth Amendment (which apply to state actors). As another example, Count II is a negligence claim under the Federal Tort Claims Act, but also alleges intentional race discrimination. And so on.

Fourth, Pittman cannot bring a claim against federal actors under section 1983. That statute applies to individuals who act under state law. But federal employees act under federal law, not state law. Any claim under section 1983 is dismissed. *See Akbar v. Interstate Realty Mgmt. Co.*, 2022 WL 4286498, at *2 (7th Cir. 2022) ("[Section] 1983 does not reach federal actors."); *see also L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 697 (7th Cir. 2017).

Fifth, Congress adopted a limited waiver of sovereign immunity in the Federal Tort Claims Act, but did not waive sovereign immunity for claims under state law. The Federal Tort Claims Act – meaning federal law – is the exclusive pathway for tort claims against federal

employees. *See Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 848 (N.D. Ill. 2021) (Dow, J.) (citations omitted) ("The remedy provided by the FTCA is the exclusive basis for a common law tort claim against an officer or employee of the federal government while acting within the scope of his office or employment."); *Kogut v. United States*, 573 F. Supp. 3d 1277, 1287 (N.D. Ill. 2021). The complaint is dismissed to the extent that Pittman purports to bring a state law tort claim, not a federal claim under the Federal Tort Claims Act.

With that windup, the Court will start with subject matter jurisdiction. Subject matter jurisdiction is the starting point because a federal court can't do anything without it. And here, the government believes that there is no jurisdiction.

After solidifying the jurisdictional footing, the Court will address the government's arguments about the sufficiency of the complaint under Federal Rule of Civil Procedure 12(b)(6).

**I.      Subject Matter Jurisdiction**

The first stop, as always, is subject matter jurisdiction. "In every case, the first task of a federal court is to ensure that it has jurisdiction." *Gen. III, LLC v. City of Chicago*, 2021 WL 2939982, at *2 (N.D. Ill. 2021) (Dow, J.).

The government waves the subject matter jurisdiction flag, so the Court will pull over and see if there is anything there, before driving to the merits. Double-checking subject matter jurisdiction is worth doing, especially when a party raises it. In fact, a court has a duty to kick the tires on subject matter jurisdiction even when the parties think that jurisdiction is good to go. *See Wilkins v. United States*, 598 U.S. 152, 157 (2023) (cleaned up) ("Jurisdictional bars may be raised at any time and courts have a duty to consider them *sua sponte*.").

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *United*

*States v. Wahi*, 850 F.3d 296, 299 (7th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

To ensure that they stay within the Article III lane, district courts must assess whether they have jurisdiction, whether the parties raised the issue or not. "Subject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." *See Craig v. Ont. Corp.*, 543 F.3d 872, 875 (7th Cir. 2008).

The government contends that this Court lacks subject matter jurisdiction for two reasons: (1) Pittman's claims fall outside the limited waiver of sovereign immunity under the Federal Tort Claims Act; and (2) Pittman failed to exhaust his administrative remedies before filing suit. *See* Mtn. to Dismiss, at 2, 4 (Dckt. No. 46).

The Seventh Circuit has concluded that questions about waiver of sovereign immunity under section 2680 of the Federal Tort Claims Act are non-jurisdictional in nature. *See Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) ("The statutory exceptions enumerated in § 2680(a)-(n) to the United States's waiver of sovereign immunity (found in § 1346(b)) limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts."); *Palay v. United States*, 349 F.3d 418, 424 (7th Cir. 2003) ("[T]he statutory prerequisites to suit and exceptions to governmental liability should instead be viewed as aspects of the plaintiff's statutory right to relief and, at the pleading stage, dealt with pursuant to Rule 12(b)(6).").

The Seventh Circuit doesn't view the exhaustion requirement under the Federal Tort Claims Act (under section 2675(a)) as jurisdictional, either. *See, e.g.*, *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (explaining that the Seventh Circuit "no longer

9

treats § 2675(a) as a jurisdictional prerequisite"); *see also Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012).

Indeed, the government concedes that the Seventh Circuit does not treat the exhaustion requirement as jurisdictional: "the exhaustion requirement is likely jurisdictional as well. Although the Seventh Circuit (alone among the circuits) has held to the contrary[.]" *See* Mtn. to Dismiss, at 4 (Dckt. No. 46).

The government might have a point about waiver and exhaustion. They might be problems. But they are not *jurisdictional* problems.

## II.     Federal Tort Claims Act – Negligence (Count I)

Turning to the merits, Pittman brings an assortment of claims under the Federal Tort Claims Act. The starting point, as always, is the text of the statute.

The Act gives district courts exclusive jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See* 28 U.S.C. § 1346(b)(1).

Notice the textual guardrails. The statute does not allow a plaintiff to sue the United States for any and all losses caused by the negligence of a federal employee, so long as state law would allow it. Instead, the statute authorizes a claim for certain types of losses, only. The loss must be "for injury or loss of property, or personal injury or death." *Id.*

Trying to stuff this case within the confines of the Federal Tort Claims Act is an odd fit, at best. It is hard to see how Pittman suffered "injury or loss of property." *Id.* He didn't lose

10

any property, and he didn't suffer a harm to any property, either. The government did not damage his property, or take away a property interest, or anything along those lines. In fact, the government banned Pittman from entering the *government's* property.

The complaint also does not allege that Pittman suffered "personal injury or death." The Postal Service kicked him out of the post office – but not *literally*.

More generally, some courts have discussed whether the FTCA requires a physical injury to property or a person to give rise to a claim. *See, e.g.*, *State of Idaho ex rel. Trombley v. United States Dep't of Army*, 666 F.2d 444, 446 (9th Cir. 1982) (reiterating that the FTCA does not "confer jurisdiction on the district court for expenses incurred by a state or other agency in fighting a forest fire," because "[s]uch expenses simply do not constitute 'money damages' 'for injury or loss of property' under the FTCA"); *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 580 (D.C. Cir. 2003) ("To the extent that the Ninth Circuit's firefighting expenses decisions require a physical injury to recover 'money damages' under the FTCA, we decline to follow them. No such requirement appears on the face of section 1346(b)(1) and we decline to engraft one."); *North Dakota v. United States*, 567 F. Supp. 3d 1111, 1117–18 (D.N.D. 2021) ("In this respect, the Court disagrees with the Ninth Circuit's inclusion of a physical harm requirement into 28 U.S.C. § 1346(b)(1). . . . Section 1346(b)(1) allows individuals to recover 'money damages . . . for injury or loss of property' arising out of the United States' negligence. Nowhere in this provision or elsewhere does 'for injury or loss of property' require the injured person suffer only a physical injury.") (internal citations omitted).

Even if the FTCA covered non-physical injuries to property interests, Pittman's case does not seem to fit the bill. Pittman does not allege a non-physical injury to a property interest. That is, he does not allege a violation of a property interest that caused no physical injury, such as a

11

trespass or an invasion of privacy. So, even if the statute applies to property interests without physical harm, it is hard to see how Pittman falls within the textual boundaries.

That said, the government does not argue that this case does not fit within the plain text of the Federal Tort Claims Act. This Court calls balls and strikes, but does not call pitches that are not thrown.

Putting that issue aside, the Court will now turn to the arguments at issue. In Count I, Pittman contends that the United States – through the Postal Service and its employees – committed negligence in two ways. *See* Second Am. Cplt., at 8–9 (Dckt. No. 45).

First, the government "negligently failed" to put policies in place that would have prevented Pittman from being excluded from the post office. *Id.* at ¶ 43. Second, the government "negligently failed to warn" Pittman that its employees were unfit for their jobs. *Id.* Along the way, Pittman contends that the Postal Service discriminated against him "because of his race," a theory that has more prominence in Count II. *Id.* at ¶¶ 41–42.

The Federal Tort Claims Act is a limited waiver of sovereign immunity. *See Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012); 28 U.S.C. § 1346(b)(1). The Act provides the sole remedy for a tort claim based on a federal employee's negligence within the scope of their employment. *See Couch*, 694 F.3d at 856.

Congress included a few carve-outs, and a few of them apply in the case at hand. For starters, Pittman alleges that the Postal Service never delivered his letter to the Postmaster General. *See* Second Am. Cplt., at ¶¶ 15, 19–20 (Dckt. No. 45). That failure to deliver might be a source of frustration, but it is not a tort. The Federal Tort Claims Act does not apply to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." *See* 28 U.S.C. § 2680(a).

12

Next, Pittman alleges that the Postal Service "negligently failed to have policies" to prevent employees from barring customers from the post office. *See* Second Am. Cplt., at ¶ 43 (Dckt. No. 45). And the Postal Service "negligently failed to warn" Pittman that employees were "unfit" for the job. *Id.*

Those allegations tie back to the broader allegations against the supervisor of the local post office. The complaint alleges that Lewis "plac[ed] plaintiff in [a] false light because Defendant filed [a] complaint with the Evergreen Park Police Department with no facts in the complaint." *Id.* at ¶ 16. That's an allegation that a federal employee made a false statement, but the FTCA excludes "[a]ny claim arising out of . . . abuse of process, libel, slander, misrepresentation, [or] deceit," among others. *See* 28 U.S.C. § 2680(h).

The last remaining leg of the claim is the allegation of race discrimination. Count I includes the cryptic allegation that "no such time limit was posted nor existed and was imposed upon plaintiff for the purpose of discriminating against plaintiff because of his race." *See* Second Am. Cplt., at ¶ 42 (Dckt. No. 45).

Whatever that allegation means, it does not allege a claim. "[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *See Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 478 (1994); *see also Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) (noting the "limited coverage of the FTCA, and its inapplicability to constitutional torts"); *Harris v. Kruger*, 2015 WL 4971888, at *2 (N.D. Ill. 2015) ("Constitutional tort claims are not cognizable under the FTCA.").

The complaint would not state a claim, even if the FTCA reached constitutional torts. The complaint basically alleges that the post office banned him from the building "because of his race." *See* Second Am. Cplt., at ¶¶ 39, 42 (Dckt. No. 45). Lewis (a black postal worker) banned

13

Pittman (a black customer). *Id.* at ¶¶ 12, 14. The complaint contains no facts suggesting that race had anything to do with it.

Judge Guzmán previously ruled that the complaint did not plausibly allege racial discrimination. *See* 2/21/23 Mem. Opin. & Order, at 4 n.2 (Dckt. No. 36); *see also Stanley v. U.S. Postal Serv.*, 2021 WL 2493389, at *2 (D. Me. 2021) (explaining that plaintiff's alleged "ban from the post office following a verbal altercation with USPS staff" did not suggest he was illegally denied service in violation of the Americans with Disabilities Act). Nothing has changed.

In sum, Count I fails to allege a negligence claim under the FTCA, so it is dismissed with prejudice.[3]

## III. Federal Tort Claims Act – Racial Discrimination (Count II)

Count II is more of the same. Pittman alleges racial discrimination, and invokes the Federal Tort Claims Act and the Civil Rights Act, as well as section 1983. He alleges that Defendants barred him from the post office "because of plaintiff's race (Black)." *See* Second Am. Cplt., at ¶ 48 (Dckt. No. 45).

---

[3] The government also argues that Pittman failed to exhaust his administrative remedies. The FTCA does contain an exhaustion requirement. *See* 28 U.S.C. § 2675. Before filing suit under the Act, a claimant must have "first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." *Id.* The government moved to dismiss for lack of exhaustion, and submitted a declaration of Kimberly A. Herbst, a Tort Claims Examiner and Adjudicator with the U.S. Postal Service National Tort Center, with the motion to dismiss. *See* Herbst Decl., at 1–2 (Dckt. No. 46-1). Herbst declared that Pittman never submitted an administrative claim. *See id.* at ¶¶ 4, 6. But exhaustion is an affirmative defense, and a plaintiff doesn't need to show that he satisfied exhaustion requirements at the pleadings stage. *See, e.g., Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 921 (7th Cir. 2018). Normally, if the court considers material outside pleadings – like an affidavit – in ruling on a motion to dismiss, the court must treat the motion as one for summary judgment. *See Squires-Cannon v. White*, 864 F.3d 515, 517 (7th Cir. 2017); Fed. R. Civ. P. 12(d). This Court could consider evidentiary material outside the four corners of the complaint if the lack of exhaustion pulled the jurisdictional rug out from under this Court's feet. But again, the Seventh Circuit has held that exhaustion is not jurisdictional under the FTCA, so this Court will decline the invitation to consider evidence about exhaustion on a motion to dismiss. In any event, Count I cannot survive for other reasons, so the Court does not need to reach Pittman's lack of exhaustion.

Judge Guzmán previously dismissed Pittman's race discrimination claim with prejudice to the extent that it relied on section 1983. *See* 2/21/23 Mem. Opin. & Order, at 3–4 (Dckt. No. 36). Judge Guzmán explained that section 1983 applies only to *state* actors, not *federal* actors (like the Postal Service employees). *See id.* at 3; *see also District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973); *Terry v. Hodapp*, 2011 WL 382816, at *2 (N.D. Ill. 2011) ("Section 1983 claims do not apply to federal actors acting in the course of their federal employment."). The operative complaint suffers from the same incurable defect.

And again, the Federal Tort Claims Act cannot come to the rescue, because it does not open the door to tort claims against federal employees for constitutional violations. *See Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 478 (1994). And even if it did, the facts simply aren't there. The complaint does not contain a factual basis that could give rise to an inference of racial discrimination.

Therefore, the Court dismisses Count II with prejudice.

## IV.    Intentional Infliction of Emotional Distress (Count III)

Count III is for intentional infliction of emotional distress. *See* Second Am. Cplt., at 10–12 (Dckt. No. 45). The Court reads the complaint to allege a federal claim under the FTCA that rests on state law, not a state law claim in its own right.[4]

In the last go-around, Judge Guzmán dismissed Pittman's intentional infliction of emotional distress claim. The Court explained that "Plaintiff's claims hinge upon the effects of Lewis's allegedly untrue complaints that placed him in a 'false light'; such allegations place his claims outside the sovereign immunity waiver in the FTCA." *See* 2/21/23 Mem. Opin. & Order,

---

[4] To the extent that the complaint purported to bring a state law claim against the federal government, it is dismissed. Congress adopted a limited waiver of sovereign immunity in the Federal Tort Claims Act. Congress did not waive sovereign immunity to state law claims.

15

at 5 (Dckt. No. 36); *see also* 28 U.S.C. § 2680(h) (excepting claims based on defamation, libel, or misrepresentation from the Federal Tort Claims Act sovereign immunity waiver); *Andreou v. United States*, 2017 WL 384699, at *3 (S.D. Ga. 2017) (recommending dismissal of claims of defamation, "false information," and "emotional distress arising from the 'defamation of his character' and 'humiliation'" relating to a post office ban and threats of future arrest).

The operative complaint contains no new allegations. There are no new facts, so there is no new reason to reach a different outcome. Count III is dismissed with prejudice.

V.   **Willful and Wanton Misconduct (Count IV)**

The last remaining claim is Count IV, a claim for willful and wanton misconduct under state law (not the FTCA). *See* Second Am. Cplt., at 12–13 (Dckt. No. 45). Pittman alleges that Lewis "discriminated by placing plaintiff in the false light." *Id.* at ¶ 65.

Pittman runs into the same waiver wall for Count IV as Count III. Namely, Count IV hinges on Pittman's allegation that a federal employee placed him in a "false light." And that allegation places his claim outside of the Federal Tort Claims Act's sovereign immunity waiver. *See* 28 U.S.C. § 2680(h) (excepting claims based on defamation, libel, or misrepresentation from the Federal Tort Claims Act sovereign immunity waiver).

In sum, Pittman's willful and wanton misconduct claim does not fall within the limited waiver of sovereign immunity under the Federal Tort Claims Act. And, to the extent that Count IV purports to arise under state law, it cannot survive in any event. The FTCA is the only way to go, and Congress closed the door to claims about false statements. So, the Court dismisses Count IV with prejudice.

**Conclusion**

For the foregoing reasons, the Court grants Defendants' motion to dismiss. Pittman has had several opportunities to file amended complaints, and has come up empty. This Court cannot foresee any scenario where Pittman could cure the incurable. The operative complaint is dismissed with prejudice.

Date: December 20, 2023

Steven C. Seeger
United States District Judge